UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

| | |
|---|---|
| BALDEMAR BAUTISTA-CRUZ, <br> RICARDO GUERRERO-CHAVERO, <br> JOSE OMAR MARTINEZ-CORONEL, <br> ENRIQUE MARTINEZ-ZEFERINO, <br> LEOPOLDO ANTONIO ORTEGA, <br> EFREN PICHARDO-HERNANDEZ, <br> ANTONIO MARCELINO ROSENDO and <br> EDGAR DAVID VELAZQUEZ-REYES, <br> individually and on behalf of <br> All other persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> D&K HARVESTING, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**COMPLAINT FOR DAMAGES,
COSTS OF LITIGTION  AND ATTORNEY'S FEE**

**INTRODUCTION**

1. This action is brought by eight Mexican nationals who lawfully entered the United States to pick citrus fruit for Defendant D&K Harvesting, Inc. during the 2013-14 or 2014-15 harvest seasons. Plaintiffs bring this action to recover minimum wages due to them under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and damages for D & K Harvesting's breach of its contractual obligations with them and their fellow fruit pickers. These contractual breaches include failure to provide wage and transportation benefits as promised in Defendant's contracts and as required by federal regulations governing the H-2A agricultural guestworker program.

2. Defendant D&K Harvesting, Inc. failed to pay Plaintiffs minimum wages as required by the FLSA for the pickers'' work harvesting fruit citrus in south and central Florida. In contravention of federal regulations and the workers' employment contracts, D&K Harvesting, Inc. compensated Plaintiffs and their co-workers only their piece-rate earnings, which routinely fell below the adverse effect wage rate mandated by the H-2A regulations.

3. Plaintiffs seek to recover their wages, actual, liquidated, consequential and compensatory damages and pre- and post-judgment interests. Plaintiffs also seek a reasonable attorney's fees pursuant to 29 U.S.C. § 216(b) and § 448.08, Fla. Stat.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 (Federal Question), 28 U.S.C. § 1337 (Interstate Commerce) and 29 U.S.C. § 216(b) (FLSA). The court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367, because these state law claims are so closely related to the federal claims that they form part of the same case and controversy.

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendant is a resident of this district and the cause of action arose in this district.

## PARTIES

6. Defendant D&K Harvesting, Inc. is a Florida corporation headquartered in LaBelle, Florida. At all times relevant to this action, D&K Harvesting, Inc. employed Plaintiffs and their co-workers within the meaning of the FLSA, 29 U.S.C. §203(d). At all times relevant to this action, Defendant D&K Harvesting, Inc. was an employer of Plaintiffs and their co-workers

within the meaning of 20 C.F.R. §655.103(b). D&K Harvesting, Inc. hired the workers, directed and supervised their daily work activities, assigned them their tasks on a daily basis, issued the workers their wages for their labor, provided the workers with housing and transported them to and from the various worksites.

7. At various times in during the 2013-14 and 2014-15 Florida citrus harvest seasons, Defendant employed Plaintiffs and other agricultural guest workers to pick oranges in southwest and central Florida for sale in interstate commerce.

8. Plaintiffs Baldemar Bautista-Cruz, Jose Omar Martinez-Coronel, Enrique Martinez-Zeferino, Leopoldo Antonio Ortega, Efren Pichardo-Hernandez and Antonio Marcelino Rosendo are citizens of Mexico and reside in the state of Veracruz.

9. Plaintiffs Ricardo Guerrero-Chavero and Edgar David Velazquez-Reyes are citizens of Mexico and reside in the state of Queretaro.

10. Each of the Plaintiffs was admitted to the United States on a temporary work visa pursuant to 8 U.S.C. §1101(a)(15)(ii)(a) to handpick fruit for Defendant in central Florida. At all times relevant to this action, Plaintiffs were engaged in commerce or in the production of goods for commerce and/or were employed in an enterprise engaged in commerce or the production of goods for commerce within the meaning of the FLSA.

## **CLASS ACTION ALLEGATIONS**

11. All claims set forth in Counts II and III are brought by Plaintiffs on behalf of themselves and all other similarly situated persons pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

12. Plaintiffs seek to represent a class consisting of all H-2A temporary foreign workers who were employed pursuant to temporary labor certifications issued to D & K Harvesting, Inc. for work during the 2013-14 or 2014-15 Florida citrus harvests.

13. The class members are so numerous and so geographically dispersed as to make joinder impracticable. The precise number of individuals in the class is known only to Defendant. However, the class is believed to include approximately 200 individuals. The class is comprised of indigent migrant workers who are citizens of Mexico. The class members are not fluent in the English language and most are unfamiliar with the American judicial system. The relatively small size of the individual claims and the indigence of the subclass members make the maintenance of separate actions by each subclass member economically infeasible.

14. There are questions of law and fact common to the class. These common legal and factual questions include whether the Defendant failed to pay the class members the contractual adverse effect wage rate for all compensable hours worked and whether Defendant failed to maintain complete and accurate records regarding the work of members of the class.

15. Plaintiffs' claims are typical of those of the other class members and these typical, common claims predominate over any questions affecting only individual class members. All class members share a common interest in Defendant's payment of the contractual adverse effect wage rate.

16. Plaintiffs will fairly and adequately represent the interests of the class. These Representative Plaintiffs have the same interests as do the other members of the class and will vigorously prosecute these interests on behalf of the class.

17. Plaintiffs' counsel are experienced in handling actions by H-2A workers to enforce their employment contracts and have handled numerous class actions before this and other federal courts, including class actions on behalf of H-2A workers bringing claims similar to those presented in this action. Plaintiffs' counsel are prepared to advance litigation costs necessary to vigorously litigate this action and to provide notice to the class members under Rule 23(b)(3).

18. A class action under Rule 23(b)(3) is superior to other available methods of adjudicating this controversy because, *inter alia*:

a. The common issues of law and fact, as well as the relatively small size of the individual class members' claims, substantially diminish the interest of members of the class in individually controlling the prosecution of separate actions;

b. Many members of the class are unaware of their rights to prosecute these claims and/or lack the means or resources to secure legal assistance;

c. There has been no litigation already commenced against the Defendant by the members of the class to determine the questions presented;

d. It is desirable that the claims be heard in this forum because the Defendant is based in this district and the acts giving rise to the causes of action set out herein arose in this district; and

e. A class action can be managed without undue difficulty because the Defendant has regularly committed the violations complained of herein, and was required to maintain detailed records concerning each member of the class.

## FACTS

### H-2A PROGRAM BACKGROUND

19. An agricultural employer may import aliens to perform labor of a temporary nature if the U.S. Department of Labor certifies that there are insufficient available workers within the U.S. to perform the job and the employment of aliens will not adversely affect the wages and working conditions of similarly-situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188 (a)(1). Aliens admitted in this fashion are commonly referred to as "H-2A workers."

20. Agricultural employers seeking the admission of H-2A workers must first file a temporary labor certification application with the U.S. Department of Labor ("DOL"). 20 C.F.R. §655.130. This application must include a job offer, commonly referred to as a "clearance order" or "job order," complying with applicable regulations. Federal regulations establish the minimum benefits, wages, and working conditions that must be offered by the petitioning employer in order to avoid adversely affecting similarly-situated U.S. workers. 20 C.F. R. §§ 655.120, 655.122 and 655.135. Among these terms are the following:

(a) The employer will pay all workers at least the applicable adverse effect wage rate for every hour or portion thereof worked during a pay period. 20 C.F.R. § 655.122(l);

(b) The employer will keep accurate and adequate records with respect to the workers' earnings and deductions from wages. 20 C.F.R. § 655.122(j);

(c) The employer will furnish the worker each payday hours and earnings statements containing, *inter alia*, the hours actually worked by the employee during that pay period.  20 C.F.R. § 655.122(k);

(d) The employer will abide by the requirements of 20 C.F.R. § 653.501, including the requirements of 20 C.F.R. §653.501(d)(4), mandating compliance with state minimum wage laws;

(e) For those employees paid on a piece rate basis, the worker's piece-rate earnings will be supplemented in any pay period in which they do not equal at least the amount the worker would have earned had he been paid at the adverse effect wage rate. 20 C.F.R. § 655.122(l)(2);

(f) The employer will guarantee to offer the worker employment for a total number of work hours equal to at least three-fourths (3/4) of the workdays set out in the contract, and pay the worker for any shortfall.  20 C.F.R. § 655.122(i);

(g) For those employees who complete 50 percent or more of the work contract, the employer will pay the worker for the reasonable costs incurred by the worker for inbound transportation and daily subsistence.  20 C.F.R. § 655.122(h)(1); and

(h) For those employees who completed the work contract period and did not have immediate subsequent H-2A employment, the employer will pay the worker for the reasonable costs incurred by the worker for outbound return transportation and daily subsistence en route. 20 C.F.R.  § 655.122(h)(2).

**Defendant's application for temporary labor certification
and recruitment of Plaintiffs and the other class members**

21. Prior to the commencement of the 2013-14 and 2014-15 Florida citrus harvests, D&K Harvesting, Inc. contracted with various growers to furnish farmworkers to harvest citrus fruit on the growers' operations in southwest and central Florida.

22. Because of the lack of available eligible workers in the United States, and in order to import foreign workers to hand-pick citrus fruit at various locations during the 2013-14 and 2014-15 harvests, D& K Harvesting, Inc. submitted temporary labor certification applications to the Office of Foreign Labor Certification of the United States Department of Labor's Employment and Training Administration. Accompanying each temporary labor certification application was a clearance order containing the terms for the job.

23. The Office of Labor Certification approved Defendant's applications for temporary labor certification to employ foreign workers during the 2013-14 and 2014-15 citrus harvests.

24. D&K Harvesting, Inc. recruited Plaintiffs and the other members of the class in Mexico to fill the positions described in its 2013-14 and 2014-15 clearance orders.

25. After being recruited by D & K Harvesting, Inc., Plaintiffs and the other class members traveled from their respective hometowns in Mexico to Monterrey, Nuevo Leon, where they were interviewed at the United States Consulate and issued H-2A visas.

26. Plaintiffs and the other class members incurred and paid expenses in conjunction with obtaining H-2A visas for work with D & K Harvesting, Inc. during the 2013-14 or 2014-15 Florida citrus harvests.  These expenses included transportation from their homes to Monterrey, lodging expenses while in Monterrey awaiting the processing of their visas, and a $6 fee paid at the U.S./Mexico border for issuance of an arrival departure document referred to as Form I-94.

27. The expenses incurred and paid by Plaintiffs and the other class members as described in Paragraph 26 were incurred primarily for the benefit or convenience of D & K Harvesting, Inc. within the meaning of the regulations implementing the FLSA, 29 C.F.R. § 531.3(d)(1).

**Defendant's employment of Plaintiffs and the class members during the 2013-14 and 2014-15 Florida citrus harvest seasons**

28. D & K Harvesting, Inc. employed Plaintiffs during the 2014-15 Florida citrus harvest season.  Plaintiffs Bautista-Cruz, Guerrero-Chavero, Martinez-Zeferino, Pichardo-Hernandez, Rosendo and Velazquez-Reyes were also employed by D & K Harvesting, Inc. during the 2013-14 Florida citrus harvest season.

29. The clearance orders served as the work contracts between D&K Harvesting and the H-2A workers recruited, including Plaintiffs, pursuant to 20 C.F.R. § 655.122(q). D&K Harvesting, Inc.'s clearance orders governed the employment between the company and all of its H-2A workers, including Plaintiffs.

30. D & K Harvesting, Inc. failed to reimburse Plaintiffs and the other class members during their first workweek of employment during the 2013-14 or 2014-15 Florida citrus harvest for their inbound transportation and subsistence expenses.

31. Plaintiffs and the other members of the class were compensated on a piece-rate basis for their employment with D & K Harvesting, Inc. during the 2013-14 or 2014-15 Florida citrus harvests.

32. The workweek piece-rate earnings of Plaintiffs and the other class members frequently totaled less than the amount due each of them at the applicable adverse effect wage rate.

33. In an effort to reduce the amount of supplemental pay required to boost the piece-rate earnings of Plaintiffs and the other class members to the adverse effect wage rate, D & K

Harvesting, Inc. under-reported on its payroll records the number of compensable hours worked by the citrus harvesters. These under-reported numbers were utilized by D & K Harvesting, Inc. in computing the weekly wages paid to Plaintiffs and the other members of the class.

34. While D & K Harvesting, Inc. furnished Plaintiffs and the other class members with hours and earnings statements each payday, these statements did not include the actual number of hours worked. Instead, these wage statements contained the under-reported hours worked as reflected on D & K Harvesting's payroll records as a result of the company's recordkeeping practices described in Paragraph 33.

35. As a result of the actions of D & K Harvesting, Inc. as described in Paragraph 33, Plaintiffs and the other class members received less than the adverse effect wage rate for their employment during the 2013-14 or 2014-15 Florida citrus harvests. Because of these same unlawful practices, during some workweeks, Plaintiffs' earnings fell below $7.25 per hour.

36. D & K Harvesting, Inc. failed to provide or pay for the outbound transportation of Plaintiffs and the other class members at the conclusion of the 2013-14 and 2014-15 Florida citrus harvest seasons.

## COUNT I

## FAIR LABOR STANDARDS ACT

37. Plaintiffs bring this claim for Defendant's violations of the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. §§201 *et seq.* ("FLSA").

38. Defendant violated the minimum wage provisions of the FLSA, 29 U.S.C. §206(a), by failing to pay Plaintiffs at least $7.25 for every compensable hour in each workweek they were employed by D & K Harvesting, Inc. during the 2013-14 or 2014-15 Florida citrus harvests.

39. The violations of the FLSA as set out in Paragraph 38 resulted in part from Defendant's failure to supplement Plaintiffs' piece-rate earning to a rate equal to or exceeding the FLSA minimum wage. The violations of the FLSA also resulted from Defendant's practice of underreporting the hours worked by Plaintiffs, as described in Paragraph 33.

40. As a consequence of Defendant's violations of the FLSA as set out in this count, each Plaintiff is entitled to recover his unpaid minimum wages, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. §216(b).

## COUNT II

### VIOLATION OF H-2A REGULATIONS

41. This count sets forth a claim by Plaintiffs and the other members of the class against Defendant for its violations of the regulations governing the temporary foreign agricultural worker (H-2A) program during the 2013-14 and 2014-15 Florida citrus harvests.

42. Despite providing assurances to the United States Department of Labor through its temporary labor certification application that the preferred employment would conform to the regulations governing the temporary foreign agricultural program, Defendant violated these regulations in a number of material respects in its employment of Plaintiffs and the other class members during the 2013-14 and 2014-15 Florida citrus harvests. Among other things:

(a) Defendant failed to pay Plaintiffs and the other class members wages during each workweek at least equal to the adverse wage effect rate;

(b) Defendant failed to keep accurate and adequate payroll records with respect to the work of Plaintiffs and the other class members, as set out in Paragraph 33;

(c) Defendant failed to furnish Plaintiffs and the other class members with earnings statements showing, *inter alia*, the actual number of hours worked, as described in Paragraph 34;

(d) Defendant failed to provide or pay for the outbound transportation and subsistence of Plaintiffs and the other members of the class at the conclusion of the 2013-14 and 2014-15 Florida citrus harvests.

43. As a direct consequence of Defendant's violations of the regulations governing the temporary foreign worker program as set forth in this count, Plaintiffs and the other class members have suffered economic injury.

## COUNT III

### BREACH OF EMPLOYMENT CONTRACT

44. This count sets forth a claim by Plaintiffs and the other members of the class against Defendant for its breach of its employment contracts, as embodied in the company's clearance orders.

45. In its clearance orders relating to the 2013-14 and 2014-15 Florida citrus harvest seasons, Defendant promised Plaintiffs employment on specific terms and conditions, including those described in Paragraph 20.

46. Defendant breached its contracts with Plaintiffs and the other class members by providing terms and conditions of employment during the 2013-14 and 2014-15 Florida citrus harvest seasons that were materially different from those set out in the clearance orders:

   (e) Defendant failed to pay Plaintiffs and the other class members wages during each workweek at least equal to the adverse wage effect rate;

   (f) Defendant failed to keep accurate and adequate payroll records with respect to the work of Plaintiffs and the other class members, as set out in Paragraph 33;

   (g) Defendant failed to furnish Plaintiffs and the other class members with earnings statements showing, *inter alia*, the actual number of hours worked, as described in Paragraph 34;

   (h) Defendant failed to provide or pay for the outbound transportation and subsistence of Plaintiffs and the other members of the class at the conclusion of the 2013-14 and 2014-15 Florida citrus harvests.

47. As a direct consequence of Defendant's contractual breaches, Plaintiffs and the toher class members have suffered economic injury.

## COUNT IV

### BREACH OF CONTRACTUAL EMPLOYMENT GUARANTEE
### (Three-fourths Guarantee)

48. This count sets forth an individual claim by Plaintiff Leopoldo Antonio Ortega against Defendant for its breach of the so-called three-fourths guarantee contained in his employment contract for the 2014-15 southwest Florida citrus harvest season.

49. Plaintiff Ortega's employment contract with D & K Harvesting, Inc. promised an average of 36 hours per week of employment for a period from November 23, 2014 through June 12, 2015.

50. Defendant terminated Plaintiff Ortega's employment without cause on May 4, 2015 and refused to offer him further employment after that date.

51. Defendant failed to pay Plaintiff Ortega the amount due him under the three-fourths guarantee contained in his employment contract and required by 20 C.F.R. § 655.122(i).

52. As a direct consequence of Defendant's breach of the three-fourths guarantee, Plaintiff Ortega suffered economic injury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that this Court enter an order:

a. Certifying this matter as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) with respect to the claims set forth in Counts II and II;

b. Granting judgment in favor of Plaintiffs on their FLSA claims as set out in Count I, and awarding each of them the amount if his unpaid wages and an equal amount as liquidated damages;

c. Granting judgment in favor of Plaintiffs and the other members of the class on their claims for violations of the regulations governing the H-2A program as set forth in Count II and awarding each of them his actual and compensatory damages;

d. Granting judgment in favor of Plaintiffs and the other members of the class on their contract claims as set forth in Count III and awarding each of them his actual and compensatory damages;

e. Granting judgment in favor of Plaintiff Leopoldo Antonio Ortega on his contract claim as set forth in Count IV and awarding him the damages due him under the three-fourths guarantee contained in his employment contract;

f. Awarding Plaintiffs a reasonable attorney's fee pursuant to 29 U.S.C. §216(b) and §448.08, Fla. Stat.; and

g. Granting any other such relief this Court deems just and appropriate.

Respectfully submitted,

*/s/ Karla C. Martinez*
Karla C. Martinez
Florida Bar Number 094674
e-mail		karla@floridalegal.org

*/s/ Gregory S. Schell*
Gregory S. Schell
Florida Bar Number 287199
e-mail:		greg@floridalegal.org

MIGRANT FARMWORKER JUSTICE
	PROJECT
508 Lucerne Avenue
Lake Worth, Florida   33460-3819
Telephone:	(561) 582-3921
Facsimile:	(561) 582-4884

*Attorneys for Plaintiffs*